In re SUN HEALTHCARE GROUP, INC., et al., Debtors.

Sun Healthcare Group, Inc., et al., Plaintiffs,

v.

Robert A. Levin, Defendant.

Bankruptcy Nos. 99–3657 (MFW) to 99–3841(MFW).

Adversary No. 00–632(MFW).

United States Bankruptcy Court, D. Delaware.

Oct. 17, 2000.

Mark D. Collins, Russell C. Silberglied, Richards, Layton & Finger, P.A., Wilmington, DE, Michael F. Walsh, Paul D. Leake, Weil Gotshal & Manges, LLP, New York City, for debtors.

Glen Rice, Scott Hazan, Jenette Barrow–Bosshart, Otterbourg Steindler & Houston, New York City, Norman Pernick, Mark Minuti, Saul Ewing Remick &

Saul LLP, Wilmington, DE, for Official Committee of Unsecured Creditors.

Kevin J. Mangan, Walsh, Monzack & Monaco, P.A., Wilmington, DE, Katherine A. Traxler, Sherri Fanger McInnes, Paul, Hastings, Janofsky & Walker, Costa Mesa, CA, for Robert A. Levin.

Stuart Hirshfield, Marc Hirshfield, Frederick Morris, Dewey Ballantine LLP, New York City, John J. Dawson, John A. Harris, Streich Lang, Phoenix, AZ, Bonnie Glantz Fatell, Blank Rome Comisky & McCauley, Wilmington, DE, for The CIT Group/Business Credit, Inc. and Heller Healthcare Finance.

Daniel K. Astin, Maria D. Giannarakis, Philadelphia, PA, Office of the United States Trustee.

## MEMORANDUM OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

The issue before this Court is whether to abstain from hearing the pending adversary proceeding. We conclude that while we are not required to abstain under 28 U.S.C. § 1334(c)(2) it is appropriate to abstain under subsection 1334(c)(1).

### I. FACTUAL BACKGROUND

Between 1991 and January, 1999, the Defendant, Robert Levin ("Levin"), held various positions of employment with several subsidiaries of Sun Healthcare Group Inc. (collectively "the Debtors"), including Senior Vice President for Ancillary Services and Chairman of the Board for Sun-Dance Rehabilitation.[2] While working for the Debtors, Levin entered into a Sever-ance Agreement which provided that if Levin left, he would be precluded from competing with the Debtors and could not solicit or otherwise "interfere" with the Debtors' relationship with their employees. After Levin left the Debtors' employ in January, 1999,[3] the parties executed a Release Agreement, which provided that Levin would release all of his claims against the Debtors in exchange for $900,000. The Release Agreement provided that it did not supercede the Severance Agreement. The parties also executed a Consulting Agreement at that time, which obligated Levin to provide the Debtors with 120 hours of consulting services over the next two years. The Consulting Agreement also contained a two year non-compete clause.

On August 3, 1999, Levin initiated a lawsuit against the Debtors in the California state court ("the California Action"). In his suit, Levin sought a declaratory judgment that the non-compete clauses of the Consulting Agreement and Severance Agreement are void and unenforceable pursuant to California's unfair competition law. Levin also sought to prevent the Debtors from intentionally interfering with Levin's relationship with his new employer, a competitor of the Debtors.

On October 14, 1999, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code. On May 19, 2000, the Debtors initiated this adversary proceeding in which they allege that Levin has breached his agreements with the Debtors and has tortiously interfered with the Debtors' business relationships. The

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

2. We have not evaluated the merits of the parties' positions and make no findings of fact on the merits. Instead, we merely recite the allegations set forth by the parties insofar as necessary to determine the issues discussed herein.

3. In his Complaint in the California Action, Levin asserted that he was involuntarily terminated. The Debtors allege that he resigned.

Debtors' Complaint alleges that, since leaving their employ, Levin has begun working for a competitor, has hired one of the Debtors' key employees, and has attempted to hire other key employees in a "predatory scheme." Accordingly, the Debtors seek declaratory and injunctive relief.

Levin filed a motion for mandatory or permissive abstention under 28 U.S.C. § 1334(c)(2) and (c)(1), respectively, so that he may proceed with the California Action. The Debtors oppose the Motion. Both sides have briefed the issue.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334.

## III. DISCUSSION

### A. Mandatory Abstention

■ Abstention by the bankruptcy court is mandatory under 28 U.S.C. § 1334(c)(2) if six requirements are met: (1) the motion to abstain is timely; (2) the Movant has already commenced an action in a state court; (3) the action is based upon a state law claim or a state law cause of action; (4) the action can be timely adjudicated; (5) there is no independent basis for federal jurisdiction which would have permitted the action to have been commenced in a United States court, absent bankruptcy; and (6) the matter before the Bankruptcy Court is non-core. The parties agree that the first and second requirements have been met. Therefore, we need only to address the last four requirements.

### 1. The California Action is Based upon a State Law Claim

The Debtors assert that Levin's action is based on New Mexico law because all of the agreements included choice of law provisions so stating. Consequently, they argue that the California court is no better able to deal with the issues than we are. We disagree that the choice of law provision, standing alone, renders this a matter of New Mexico law.

In his Complaint, Levin asserted three causes of action; two were based upon the California Business and Professional Code.[4] While Levin does not contradict the Debtors' assertion that all of the agreements at issue included a choice of law provision, he relies on California law which limits the effect of such a provision in non-compete agreements. In support of this position, Levin cites *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881, 72 Cal.Rptr.2d 73 (Cal.Ct.App.1998).

The *Application Group* case involved a non-compete agreement, executed by an employee (Pike) who resided in Maryland at the time, which provided for Maryland law to apply. When the employee resigned and went to work for a California company (AGI), her former employer (Hunter) sued in Maryland. The Maryland Court found that the non-compete agreement was valid and enforceable under Maryland law. However, before relief could be ordered by the Maryland Court, AGI and Pike filed suit in California seeking a declaratory judgment that California law, not Maryland law, applied.

In applying choice of law principles, the California Court refused to give effect to the choice of law provision in the non-compete agreement. The Court did so

---

**4.** Section 16600 of the California Business and Professionals Code provides: "Except as provided in this section, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof.Code § 16600.

based on California's strong public policy against non-compete agreements and the state's interest in protecting its employers and employees from anti-competitive conduct by out-of-state employers. The Court concluded that it was "convinced that California [had] a materially greater interest than ... Maryland in the application of its law to the parties' dispute, and that California's interests would be more seriously impaired if its policy were subordinated to the policy of Maryland." *Id.* at 900–01, 72 Cal.Rptr.2d 73.

The Court also found that under a "relevant contacts" analysis, California law would apply because AGI, a California company, was not a party to the non-compete agreement and enforcement of the agreement would affect AGI's rights. The Court also noted that Hunter maintained a branch office in California and competed with AGI in California for both business and employees. *Id.* at 904–05, 72 Cal.Rptr.2d 73.

The instant case is very similar to the facts in the *Application Group* case. Since California choice of law principles will govern which law will be applied, we cannot determine, as the Debtors assert, that New Mexico law will apply. Rather, in the first instance, the California Court will have to determine under its choice of law provisions whether to apply New Mexico or California law, and, in light of the *Application Group* decision, it is likely that the California Court will determine that California law should apply.

**2.** *The California Action Can Be Timely Adjudicated*

The Debtors assert that the California Action cannot be timely adjudicated, primarily because they intend to remove that action to the federal court in California.[5]

■ While we find, as discussed in Part (A)(4), that there is diversity which would allow the Debtors to remove this action to the federal court in California, we do not weigh that in favor of finding that resolution would be faster in this jurisdiction. If the Debtors choose to remove the case to federal court, and then seek to transfer venue back to Delaware, any delay occasioned would be caused by the Debtors. It is inequitable to allow a party to assert that another court will not be able to resolve a case quickly, where it is that party's action which makes it impossible for the case to be quickly resolved.

Since the California Action was commenced prior to the Debtors' Chapter 11 cases, we presume that the California Court can decide the matter quicker than we can. Additionally, the California Court will be able to decide the issues of the case more easily than this Court since they involve California law. The Debtors presented no other evidence to persuade us that the California Court could not timely adjudicate the Action before it. We therefore find that the California Action can be timely adjudicated in the California Court.

**3.** *The Matter Before The Bankruptcy Court Is Non-core*

Levin asserts that the Adversary Proceeding is non-core because the dispute is a simple contract issue which is governed by state law. The Debtors counter that the issue is a core proceeding under 28 U.S.C. § 157(b)(2), specifically citing (A) administrative matters and (O) other proceedings affecting the estate. We conclude that the matter is non-core because of the weak nexus between the bankruptcy cases and the adversary proceeding.

■ Under Third Circuit case law, "a proceeding is core under [28 U.S.C. § ]

**5.** The Debtors also argue that since New Mexico law applies, the California Court cannot timely adjudicate the California Action. As noted in Part (A)(1) above, we are not convinced that the California Court will apply New Mexico law rather than California law.

157 if it invokes a substantive right provided by Title 11, or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Beard v. Braunstein,* 914 F.2d 434, 444 (3d Cir. 1990); *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir.1987). Courts in this district, in applying the Third Circuit's definition of core, have required that the action "have as a foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment, although of necessity there may be a peripheral state law involvement." *Mellon v. Delaware & Hudson Railway Co. (In re Delaware & Hudson Railway Co.),* 122 B.R. 887, 890 (D.Del.1991); *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities,* 107 B.R. 34, 40 (D.Del.1989). Whether a matter is core or non-core is a case-by-case determination. *See Auto Dealer Services, Inc. v. Prestige Motor Car Imports, Inc. (In re Auto Dealer Services, Inc.),* 96 B.R. 360, 363 (Bankr.M.D.Fla.1989); *Mansker v. Campbell (In re Mansker),* 60 B.R. 803, 805 (Bankr.D.Mass.1986).

■ This case does not present a situation which invokes a substantive right provided by title 11; rather, it is founded on state law claims. The proceeding could arise independent of a bankruptcy case, as evidenced by that fact that Levin commenced the suit prior to the bankruptcy filing. We can foresee situations where enforcement of a non-compete agreement might be a core matter if it had a closer nexus to the bankruptcy case, but that is not the case here. There is no evidence that Levin is crucial to the Debtors or that his success in the California Action would threaten the financial health and ability of the Debtors to reorganize. Accordingly, we conclude that this matter is not core.

### 4. Diversity Is An Independent Basis For Federal Jurisdiction

■ Levin asserts that there is no federal jurisdiction beyond the Debtors' bankruptcy because there is no complete diversity [6] among the parties. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Under 28 U.S.C. § 1332(c), corporations are citizens, for diversity purposes, of both the state where their principal places of business are located and the state in which they are incorporated. The affidavit of Sherri Fanger McInnes' asserts that twenty-two of the Debtors' affiliates are incorporated in California. However, Levin did not name any of the California affiliates as defendants in the California Action.

"[T]here is no diversity jurisdiction unless each defendant is a citizen of a different state from each plaintiff." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Therefore, because none of those twenty-two affiliates is a defendant, there is complete diversity and an independent ground for federal jurisdiction. Consequently, abstention is not mandated under 28 U.S.C. § 1334(c)(2).

### B. Permissive Abstention

■ Courts have previously identified twelve factors to be considered in deciding issues of permissive abstention:

(1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5)

---

**6.** Levin does not dispute that the amount in controversy meets the requirements of 28

U.S.C. § 1332.

the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with the enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties.

*Continental Airlines, Inc. v. Allen (In re Continental Airlines, Inc.)*, 156 B.R. 441, 443 (Bankr.D.Del.1993); *TTS, Inc. v. Stackfleth (In re Total Technical Svcs., Inc.)*, 142 B.R. 96 (Bankr.D.Del.1992).

 In this case, we conclude that it is appropriate to grant Levin's Motion to abstain under the doctrine of permissive abstention. (1) We conclude there is no impact on the administration of the bankruptcy estate which would favor abstaining from, or deciding, this case. (2) As noted in Part (A)(1), state law issues dominate the subject matter of the litigation. (3) While California law on non-compete clauses is not unsettled, we conclude that the California state court is the better forum to decide the issue. (4) There is a state court proceeding already commenced. (5) Diversity jurisdiction is an independent basis for federal jurisdiction. (6) and (7) While the adversary is related to the main bankruptcy cases, we find that its nexus is remote since it deals with the validity of a non-compete agreement of a single former employee. Therefore, we conclude that this is not a "core" proceeding. (8) It is feasible (and in fact preferable) to allow the state court to conclude the case in front of it, leaving for this Court only a

determination as to the effect of the bankruptcy filing on the parties' rights. (9) Given this Court's heavy docket, the California Action can be administered in the California Court at least as quickly as here. (10) We do not believe that the filing of the adversary proceeding was an attempt to forum shop by the Debtors. (11) The issue presented to the California Court is one of equitable relief; therefore, the Debtors' right to a jury trial is not implicated. (12) The only nondebtor party involved in the state court action is Levin.

Evaluating the twelve factors is not a mathematical formula. *Trans World Airlines, Inc. v. Karabu Corp.*, 196 B.R. 711, 715 (Bankr.D.Del.1996). However, in this case, the factors overwhelmingly weigh in favor of abstaining under 28 U.S.C. § 1334(c)(1).

## IV. CONCLUSION

For the foregoing reasons, we grant Levin's motion for abstention under the doctrine of permissive abstention.